# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

David M. Kedrowski,

               Plaintiff,

v.

Mary E. Madden, *in her individual capacity*, Ivy S. Bernhardson, *in her official and individual capacity*, Patrick D. Robben, *in his individual capacity*, Robert A. Blaeser, *in his individual capacity*, Christy Snow-Kaster, *in her individual capacity*, Lolita Ulloa, *in her individual capacity*, Catherine S. Brey, *in her individual capacity*, Loretta Frederick, *in her individual capacity*, Elizabeth Richards, *in her individual capacity*, Liberty Aldrich, *in her individual capacity*, Minnesota Coalition for Battered Women, *in its individual capacity*, Battered Women's Justice Project, *in its individual capacity,* Fund for the City of New York, *in its individual capacity*, Hennepin County, *in its individual capacity*, Fund for the City of New York, *in its individual capacity*,

               Defendants.

Case No. 18-cv-2573 (WMW/SER)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Defendants' motions to dismiss, (ECF Nos. 59, 66, 72, 78, 85). These motions were referred for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.2. This Court recommends Defendants' motions be granted.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

### A.  Kedrowski's Complaint

Plaintiff David Kedrowski initiated this action in September 2018. (ECF No. 1). Most defendants moved to dismiss. (ECF Nos. 19, 26, 33, 39). Kedrowski then filed his amended complaint on December 6, 2018, (Am. Compl., ECF No. 54). Defendants again seek dismissal. (ECF Nos. 59, 66, 72, 78, 85).

Kedrowski alleges Defendants "engaged in a successful multi-year campaign to subjugate the independence, fairness, and impartiality of the Minnesota Fourth Judicial District in order to convert [it] into an instrument of pro-female domestic abuse victim advocacy." (Am. Compl. ¶ 2). Put simply, Kedrowski claims the Fourth Judicial District was rigged and used as an "instrument of domestic abuse victim advocacy." (ECF No. 105, at 1). Kedrowski asserts that a grant from the federal Office on Violence Against Women ("OVW") tainted two Minnesota state proceedings involving Kedrowski: an order for protection ("OFP") proceeding by his then-wife and his divorce proceedings.

### 1.   The OVW Grant

The grievances underlying Kedrowski's claims stem from a 2014 grant from the OVW. The OVW grant was to "help provide victims with the protection and services they need to pursue safe and healthy lives, while improving communities' capacity to hold offenders accountable for their crimes." (Am. Compl. ¶ 41). The OVW grant guidelines noted battered women lose custody of their children because family courts do not take domestic violence into account in their decision making. (Am. Compl. ¶ 42).

The Fourth Judicial District created a management team in 2014 to seek the OVW grant and then administer it once it was awarded. The grant management team included Judge Robert A. Blaeser, Referee Mary E. Madden, Lolita Ulloa, Catherine S. Brey, Elizabeth Richards, Loretta Frederick, and Liberty Aldrich. (Am. Compl. ¶ 33). Judge Blaeser and Referee Madden are judicial officers in the Fourth Judicial District. (Am. Compl. ¶¶ 11, 14). Ulloa leads the Hennepin County Domestic Abuse Service Center. (Am. Compl. ¶ 16). Brey serves as executive director of the Fourth Judicial District Family Violence Coordinating Council. (Am. Compl. ¶ 17). The remainders are not government employees: Richards is the executive director of the Minnesota Coalition for Battered Women, (Am. Compl. ¶ 19); Frederick is a senior legal policy advisor for the Battered Women's Justice Project, (Am. Compl. ¶ 18); and Aldrich is an employee of the Fund for the City of New York/Center for Court Innovation, (Am. Compl. ¶ 20). The grant management team met monthly. (Am. Compl. ¶ 34). Once the grant was awarded, Judge Patrick D. Robben and Referee Christy Snow-Kaster joined the grant management team. (Am. Compl. ¶ 49). Chief Judge Chief Judge Ivy S. Bernhardson approved the Fourth Judicial District's activities in seeking the OVW grant and two extensions to that grant. (Am. Compl. ¶¶ 36, 53–54).

Kedrowski asserts that, through the OVW grant, OVW and various non-governmental organizations—the Minnesota Coalition for Battered Women, the Battered Women's Justice Project, and the Fund for the City of New York/Center for Court Innovation—became "engrained" within the Fourth Judicial District. (Am. Compl. ¶¶ 55–56). These NGOs, Kedrowski asserts, have a stated goal of improving litigation outcomes

for women alleging domestic violence. (Am. Compl. ¶¶ 57–62). Further, the Battered Women's Justice Project finds "general neutral terms" to be "highly problematic," opting for terms such as "woman abuse" and "violence against women" instead. (Am. Compl. ¶ 59). These NGOs joined a campaign that promotes always believing women's allegations of domestic abuse. (Am. Compl. ¶ 60). Thus, Kedrowski alleges, the OVW grant implementation led to pro-women and anti-men policies. (Am. Compl. ¶¶ 63–64).

In 2018, Hennepin County provided funds for free legal representation to persons alleging domestic abuse in the Fourth Judicial District. (Am. Compl. ¶ 70). This free legal aid was delivered through the Hennepin County Domestic Abuse Service Center. (Am. Compl. ¶ 71). These funds replaced funds from the expiring OVW grant. (Am. Compl. ¶ 72). Statements made by various Hennepin County officials show the funds were intended to help women at OFP hearings. (Am. Compl. ¶¶ 74–75). Kedrowski asserts this led to a litigation advantage for women accusing men of domestic violence. (Am. Compl. ¶¶ 89–96). Additionally, the Domestic Abuse Service Center, a non-judicial entity, reviews cases and determines where they should be heard by the Fourth Judicial District. (Am. Compl. ¶ 95).

Kedrowski asserts that a view permeated the Fourth Judicial District via the OVW grant: that allegations of domestic abuse were never to be challenged and abusers were to be held accountable. (Am. Compl. ¶¶ 108–126). This included training judicial officers to prepare OFP orders prior to hearings on domestic abuse petitions. (Am. Compl. ¶ 114). The Fourth Judicial District was required to report back to OVW regarding "performance measurements" for OFP hearings and decisions. (Am. Compl. ¶ 118).

## 2.        Kedrowski's State Court Proceedings

Kedrowski's told his then-wife that he was filing for divorce in August 2015. (Am. Compl. ¶ 179). Kedrowski's then-wife sought an ex parte OFP for herself and their daughter. (Am. Compl. ¶ 180). Kedrowski's then-wife received assistance from the Domestic Abuse Service Center in completing the OFP application. (Am. Compl. ¶ 182). Kedrowski's then-wife's ex parte OFP application was granted by Judge Robben. (Am. Compl. ¶ 183). This included granting Kedrowski's then-wife full custody of their daughter and exclusive use of the marital home. (Am. Compl. ¶ 183). Three weeks later, a different judge dismissed the OFP application, finding the OFP application did not allege any immediate danger of domestic abuse and the conduct alleged did not meet the definition of domestic abuse. (Am. Compl. ¶ 184).

Kedrowski's divorce proceedings lasted from October 2015 to April 2018. (Am. Compl. ¶ 188). Referee Madden presided over the proceedings. (Am. Compl. ¶ 188). Kedrowski asserts that his divorce proceedings were assigned to Referee Madden by the Domestic Abuse Service Center given the allegations of domestic abuse and her involvement with the OVW grant management team. (Am. Compl. ¶ 193). Kedrowski was required to receive permission from Referee Madden before filing any motions. (Am. Compl. ¶¶ 195–97). Kedrowski was denied the opportunity to file motions on ten occasions, largely pertaining to requests for temporary parenting time or modifications to the temporary parenting time order. (Am. Compl. ¶¶ 197–222). When Kedrowski learned of Referee Madden's role on the OVW grant management team, he sought to disqualify

her, but Referee Madden refused Kedrowski permission to file the motion. (Am. Compl.
¶¶ 214–216).

### 3.    Kedrowski's Claims

Kedrowski sues the persons and entities affiliated with the OVW grant. This
includes the Fourth Judicial District and Hennepin County officials that were on the
OVW grant management team: Referee Madden; Judge Robben; Judge Blaeser; Referee
Snow-Kaster; Ulloa; and Brey. (Am. Compl. ¶¶ 11, 13–17). Other defendants sued due to
their participation on the OVW grant management team include Frederick, Richards, and
Aldrich. (Am. Compl. ¶¶ 18–20). Kedrowski also sues "active participants" or "critical
partners" of the OVW grant: the Minnesota Coalition for Battered Women; the Battered
Women's Justice Project; and the Fund for the City of New York / Center for Court
Innovation. (Am. Compl. ¶¶ 21–23). In a similar vein, Kedrowski sues Hennepin County.
(Am. Compl. ¶ 24). Finally, Kedrowski sues Chief Judge Bernhardson for her role in
administering the Fourth Judicial District and approving the OVW grant and its two
extensions. (Am. Compl. ¶ 12).

Kedrowski asserts nine counts in his Amended Complaint. Counts 1 and 2 are
lumped together: § 1983 claims for violations of Kedrowski's right to an independent
tribunal and to a fair and impartial tribunal. (Am. Compl. ¶¶ 224–37). The Fourth Judicial
District, Kedrowski alleges, lost its independence and impartiality when it accepted the
OVW grant, integrated domestic abuse victims into the court system, enacted a mission
of procuring favorable litigation outcomes for domestic abuse victims, implemented pro-
domestic abuse victim advocacy policies and training, and created a domestic abuse

victim advocacy culture within the court system. (Am. Compl. ¶ 227). Count 3 asserts a § 1983 equal rights claim. (Am. Compl. ¶¶ 238–51). Kedrowski asserts the policies adopted by the Fourth Judicial District pursuant to the OVW grant punished those accused of domestic violence, denied those accused of domestic violence the ability to litigate, created a favored class of litigants by providing funding for legal assistance to domestic violence victims, trained judicial officers with pro-female domestic abuse victim advocacy, created pro-female and anti-male training materials, and fostered an anti-male culture against men accused of domestic violence. (Am. Compl. ¶ 241).

In Count 4, Kedrowski alleges, via § 1983, a procedural due process violation. (Am. Compl, at 42–45). Kedrowski asserts the policies implemented pursuant to the OVW grant limited the ability of those accused of domestic violence to litigate the claims against them, allowed nonjudicial domestic abuse victim advocates to make case assignments, and used various models that favored domestic abuse victims. (Am. Compl., at 43). Through Count 5, Kedrowski asserts a constitutional conspiracy under § 1985, claiming that the Fourth Judicial District was focused on increasing conviction rates for men accused of domestic violence through various means, including making adverse findings in civil litigation. (Am. Compl., at 45–47). In Count 6, Kedrowski brings a *Monell* claim under § 1983, alleging that Hennepin County used the courts to fund domestic abuse victim litigation against men. (Am. Compl., at 47–49).

Count 7 is a § 1983 failure to train claim, where Kedrowski asserts the judicial officers involved with the OVW grant were not trained on due process, impartiality, rules of court, and other constitutional principles. (Am. Compl., at 49–50). In Count 8,

Kedrowski asserts a § 1983 failure to supervise claim. (Am. Compl., at 50–51). Count 9 is a § 1983 substantive due process claim. (Am. Compl., at 51–53). Kedrowski asserts he was denied his right to parent due to the policies enacted via the OVW grant. (Am. Compl., at 52).

### B.  Motions to Dismiss

All defendants have sought dismissal of Kedrowski's Amended Complaint on various grounds. The Judicial Defendants[1] assert the *Rooker-Feldman* and *Younger* abstention doctrines, as well as judicial immunity, legislative immunity, qualified immunity, and a lack of standing, bar Kedrowski's claims. The Hennepin County Defendants[2] likewise assert that the *Rooker-Feldman* and *Younger* abstention doctrines, as well as a lack of standing and failure to state a claim, prevent the Court from hearing Kedrowski's claims. Fredrick and the Battered Women's Justice Project assert the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine and that Kedrowski fails to state a claim. Richards and the Minnesota Coalition for Battered Women assert the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine and that Kedrowski fails to state a claim. The New York Defendants[3] first argue the Court lacks personal jurisdiction over them, but echo the *Rooker-Feldman* and *Younger* abstention doctrines arguments, as well as the argument that Kedrowski fails to state a claim. In

---

[1] The Judicial Defendants are: Chief Judge Bernhardson, Judge Blaeser, Judge Robben, Referee Madden, Referee Snow-Kaster, and Brey.
[2] Hennepin County and Ulloa.
[3] Aldrich and the Fund for the City of New York.

response, Kedrowski seeks discovery on the question of personal jurisdiction. (ECF No. 95).

## II. ANALYSIS

### A. Legal Standard

Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1), and 12(b)(6). When determining a Rule 12(b)(1) motion, courts "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Carlsen*, 833 F.3d at 908 (quoting *Osborn*, 918 F.2d at 729 n.6).

In deciding a Rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations and then determines "whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The court draws reasonable inferences in the plaintiff's favor. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *accord Zink*, 783

F.3d at 1098. Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In assessing a complaint by a *pro se* plaintiff, the court applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (quotation and citation omitted); *accord Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "If the essence of an allegation is discernible," then the court, in applying a liberal construction to *pro se* complaints, "should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Despite the liberal construal of such complaints, the *pro se* plaintiff "still must allege sufficient facts to support the claims advanced." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (quoting *Stone*, 364 F.3d 912, 914 (8th Cir. 2004)). Thus, *pro se* litigants "must set a

claim forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Stringer*, 446 F.3d at 802 (quoting *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981)).

### B.  Jurisdictional Principles: *Rooker-Feldman* & *Younger* Abstention

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction" and must decide jurisdictional questions. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (noting that federal appellate courts have a "special obligation" to satisfy itself of its own jurisdiction and that of the lower courts in a case under review). "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"The *Rooker–Feldman* doctrine stands for the general principle that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction to review state court judicial decisions." *Prince v. Arkansas Bd. of Exam'rs in Psychology*, 380 F.3d 337, 340 (8th Cir. 2004) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923)). "Such jurisdiction is vested only in the United States Supreme Court." *Prince*, 380 F.3d at 340; *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) ("The basic theory of the *Rooker–Feldman* doctrine is that only the United States Supreme Court has been given jurisdiction to review a state-court decision, so federal district courts generally lack

subject-matter jurisdiction over attempted appeals from a state-court judgment.") (quotation and citations omitted). *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Nor may litigants "pursue federal claims with allegations that are inextricably intertwined with a state court decision." *Prince*, 380 F.3d at 340. "A federal claim is inextricably intertwined with a state court judgment when the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Canal Capital Corp. v. Valley Pride Pack*, Inc., 169 F.3d 508, 512 (8th Cir. 1999) (internal quotations omitted). "[L]itigants can choose whether to pursue claims in state or federal court, and once a party has litigated in state court, however, he cannot circumvent *Rooker–Feldman* by recasting his or her lawsuit as a Section 1983 action." *Robins*, 631 F.3d at 925 (internal quotations, citations, and alterations omitted).

Similarly, the "domestic relations exception, first articulated in *Barber v. Barber,* [62 U.S. 582, 584 (1859)], divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody." *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). And "when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction." *Id.* (declining to exercise jurisdiction over claims sounding in tort that were "inextricably intertwined with the prior property settlement incident to the divorce proceeding"); *Wallace v. Wallace*, 736 F.3d

764, 767 (8th Cir. 2013) ("[A] federal suit is 'inextricably intertwined' with a state domestic proceeding, thereby depriving the federal court of subject matter jurisdiction, where the requested federal remedy overlaps the remedy at issue in the state proceeding.").

Here, Kedrowski complains of injuries caused by state-court judgments rendered before this federal proceeding commenced. Kedrowski attempts to avoid *Rooker-Feldman* by asserting he is not a state court loser, but is instead a state court winner, pointing to the fact that the OFP proceedings against him were dismissed and his divorce proceedings are not final because the "divorce is currently on appeal with no final judgment." (ECF No. 105, at 16). Kedrowski's characterization of his claims display the Catch-22 of his arguments. (ECF No. 105, at 7–8 ("The *cause* of harm as the Judicial Defendants' independent and nonjudicial actions outside of those proceedings. The *effect* was harm within state court proceedings.") (emphasis in original); ECF No. 105, at 2 ("Kedrowski's complaint does not allege harm arising from any state court proceeding. Nor does he seek to interfere with or change anything from one. In fact, Kedrowski won one of the two state court cases involved here.")). In attempting to avoid *Rooker-Feldman*, Kedrowski renders himself unharmed for standing purposes.[4] Moreover, in his

---

[4]     To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "[A]n injury in fact must be both concrete *and* particularized." *Id.* at 1548 (emphasis in original).
        Kedrowski's only contact or interaction with Defendants was via the state court proceeding. If he was not harmed by that proceeding, he cannot have suffered an injury traceable to Defendants' conduct. Thus, if Kedrowski did not lose some way in state court, he has not suffered harm.

attempt to avoid the requirement that the state-court judgment be final, Kedrowski unintentionally highlights the call for *Younger* abstention.

Complimentary to *Rooker-Feldman*, abstention is an exception to the general rule that "federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). The *Younger* line of cases "counsels federal-court abstention when there is a pending state proceeding" of a certain type. *Moore v. Sims*, 442 U.S. 415, 423 (1979). The doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Id.* Thus, abstention is appropriate where federal court involvement would "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc.*, 571 U.S. at 72–73; *id.* at 73 ("Circumstances fitting within the *Younger* doctrine . . . include 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'") (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989)). To the extent this Court has jurisdiction under *Rooker-Feldman*, abstention would be appropriate. Kedrowski's divorce proceeding is not yet final given his pending appeal. Kedrowski can challenge the procedural oddities of his divorce proceeding in the Minnesota court system. There is nothing extraordinary about Kedrowski's claims that compel this Court to intervene in the state process.

Kedrowski asks this federal court to review the decisions made in his state divorce proceedings, decisions which were tainted by a previous state-court proceeding and

various policy decisions made before that. While Kedrowski asserts he is not *directly* challenging the state-court judgments themselves, his supposed federal claims are inextricably intertwined with those state-court decisions. Kedrowski cannot reframe his dissatisfaction with the state-court process as federal claims to create an ancillary, backdoor state-court appeal in federal court. Moreover, the domestic relations exception further counsels against federal court involvement in such matters, as such disputes are squarely within the province of state courts. While Kedrowski has reframed his arguments as claims against actors other than his ex-wife, his present suit overlaps with the state domestic relations proceedings. Therefore, this Court finds it lacks jurisdiction to consider Kedrowski's Amended Complaint.

This case is similar to one faced by a federal court within this Circuit, *Meyer v. Mckinley*, 2015 WL 9484509, at *1 (N.D. Iowa Dec. 29, 2015), *aff'd* 655 F. App'x 522 (8th Cir. 2016) (per curiam). Meyer and his ex-wife agreed upon a dissolution decree to end their marriage, but less than two months later Meyer asserted his ex-wife was violating the child visitation provisions of that decree. *Id.* at *2. An Iowa state judge found that Meyer's ex-wife was not violating the decree. *Id.* The former spouses battled for four contentious years in the Iowa courts. *Id.* Ultimately, Meyer brought suit against his ex-wife, his own attorney, and six Iowa state judges. *ID.* at *1–*2. Meyer alleged that the defendants demonstrated bias against him as an "outsider" from California compared to his ex-wife, who was a "hometown" Iowa girl. *Id.* at *2.

The court framed the premise of Meyer's suit as: "the decisions made by the Iowa state courts in his child-custody dispute with [his ex-wife] were tainted by bias and

prejudice and, therefore, were incorrect." *Id.* at *4. The court noted that while he "couched his claims in the language of federal law, it is clear that Meyer is attempting to undermine those state decisions in federal court." *Id.* Thus, *Rooker-Feldman* and the domestic relations exception barred review. *Id.* Meyer attempted to argue his complaint represented "independent harms" that were not addressed by the state courts. *Id.* The court concluded it was "clear that the injuries he is complaining of were caused by the state court's judgment against him." *Id.* Meyer could not "simply recast his state court claims under § 1983 and § 1985 and attempt to relitigate his state court claims in federal district court." *Id.* His "recourse was to seek further review by the Iowa Supreme Court or the United States Supreme Court." *Id.* Thus, the court had no jurisdiction to review decisions by the Iowa state courts. *Id.*

Kedrowski's complaint is similarly barred. Like Meyer, Kedrowski alleges that the decisions in the OFP proceeding and, more importantly, the divorce proceeding were tainted by bias. Instead of an out-of-state bias, Kedrowski asserts the bias was against men accused of domestic abuse. Like Meyer, Kedrowski attempts to argue that "independent harms" are at issue in this lawsuit and that those harms were unaddressed by the Minnesota courts. But, as noted above, Kedrowski's injuries stem from the state-court judgments. While Kedrowski does not seek injunctive relief like Meyer, he seeks a declaration, as did Meyer, that the actions in the state proceedings were unlawful. Like in *Meyer*, Kedrowski cannot recast his state court claims as federal claims to relitigate in federal court or undermine the state court decision. Kedrowski's recourse lies in the Minnesota appellate courts.

*Rooker-Feldman* requires finality of a state court judgment. Kedrowski's divorce proceeding is not yet final, as he admits, because of his pending appeal. But Kedrowski cannot evade the impact of *Rooker-Feldman* on his claims merely because he brought them before his state divorce proceeding finalized. The OFP proceeding, however, is final. Kedrowski espouses the OFP proceeding as the inchoate harm underlying his divorce proceeding. Kedrowski asserts that the Fourth Judicial District made improper policy decisions. Those policy decisions tainted Kedrowski's OFP proceeding. That taint from the OFP proceeding was then carried forward into his divorce proceeding. This imbroglio of final and ongoing state court decisions renders it impossible to disentangle the OFP proceeding and the divorce proceeding from one another.

Furthermore, it is impossible to separate the harms alleged by Kedrowski to avoid concerns related to *Rooker-Feldman*, *Younger*, or standing. Kedrowski cannot rely both upon this causal link from policy decision-making through the OFP decision and into the divorce proceeding to suggest harm for standing purposes while simultaneously arguing that each of these steps can be separated and considered independently from one another to avoid jurisdictional barriers. Nevertheless, the fact remains that Kedrowski is attempting to call into question the state-court decisions made in the OFP proceeding and the divorce proceeding. Further, even if Kedrowski claims were not direct challenges to the OFP and divorce proceeding decisions, his claims are inextricably intertwined with those decisions. *Rooker-Feldman* bars such claims all the same. Whether this Court analyzes Kedrowski's suit under *Rooker-Feldman* or *Younger* or the domestic relations exception, an exercise of jurisdiction would be improper pursuant to any of these

doctrines. *See, e.g.*, *Meyer v. Haeg*, 2016 WL 8671831, at *4 (D. Minn. Dec. 9, 2016) (finding that *Rooker-Feldman* barred plaintiff's state and federal law claims that were "fundamentally about his dissatisfaction" with a custody decision); *Pease v. Pease*, 2011 WL 4529351, at *6 (D. Minn. Aug. 11, 2011) (finding that *Rooker-Feldman* barred a case where plaintiff asked the federal court "to interfere with actions that have been decided or are pending in a state court custody/child support case"), *report and recommendation adopted by* 2011 WL 4529109 (D. Minn. Sept. 28, 2011).

## C. Judicial, Quasi-Judicial, and Legislative Immunity

Even if this Court had jurisdiction over Kedrowski's claims and abstention was not warranted, suit against the judicial decision-makers in this case is barred. "The immunity of a judge for acts within his jurisdiction has roots extending to the earliest days of the common law." *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976). "A judge is entitled to absolute immunity for all judicial actions that are not 'taken in a complete absence of all jurisdiction.'" *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Thus, "a judge is immune from liability for damages if he had jurisdiction over the subject matter and if he acted in his judicial capacity." *Billingsley v. Kyser* 691 F.2d 388, 389 (8th Cir. 1982) (per curiam).

Here, Kedrowski does not challenge the jurisdiction of the Fourth Judicial District over either the OFP proceeding or the divorce proceeding. Nor could Kedrowski credibly challenge the jurisdiction of the family courts over those proceedings because "Minnesota's district courts are courts of general jurisdiction that . . . have the power to hear all types of civil and criminal cases." *State of Minnesota v. Schnagl*, 859 N.W.2d

297, 301 (Minn. 2015); Minn. Stat. § 484.01, subd. 1; Minn. Stat. § 484.65 (establishing the Fourth Judicial District's Family Court Division).

Kedrowski cannot credibly allege the family court acted outside its authority in ruling in the OFP or divorce proceedings. Rather, Kedrowski asserts the judicial decision-making was tainted. But "judicial immunity is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at 11. Thus, to the extent Kedrowski challenges the judicial decisions in this case, the judicial decisionmakers are absolutely shielded from Kedrowski's claims. *Id.* ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages.").

Kedrowski's challenge to the policies enacted by the OVW grant management are also barred by the doctrine of quasi-judicial immunity. "Persons who perform quasi-judicial functions are entitled to absolute immunity." *VanHorn v. Oelschlager*, 457 F.3d 844, 847 (8th Cir. 2006). This would likely include implementation of court policies. *See, e.g.*, *John Chism Bail Bonds, Inc. v. Pennington*, 656 F. Supp. 2d 929, 935 (E.D. Ark. 2009) (quasi-judicial immunity applied to administrative implementation of bond policy). Because Kedrowski sues all defendants in their individual capacities, quasi-judicial immunity bars claims against the OVW grant management team.

Finally, the OVW grant management team is entitled to legislative immunity. Judges are entitled to legislative immunity where their acts are substantively legislative, involving a policy-making or line-drawing decision, and the act is procedurally legislative, requiring established legislative procedures. *Perez v. Gomez*, 618 F. App'x 157, 161 (3d Cir. 2015). As Kedrowski alleges, the OVW grant management team held

regular meetings and created minutes of those meetings, considered policy changes, and enacted policy changes. These actions are legislative in nature. Thus, to the extent claims against the OVW grant management team are not barred by quasi-judicial immunity, they are barred by legislative immunity.

This Court has concluded it lacks jurisdiction over Kedrowski's claims pursuant to *Rooker-Feldman*. To the extent any claims survive *Rooker-Feldman*, *Younger* counsels for abstention. If Kedrowski's claims pass through those two substantial barriers, they come up against another obstacle: immunity. The judicial decisionmakers are entitled to judicial immunity. Suit against the remaining defendants is likely barred by either quasi-judicial immunity or legislative immunity. This Court does not make a recommendation as to quasi-judicial immunity or legislative immunity, however, given the application of *Rooker-Feldman*.

### D. Other Barriers to Suit

Defendants raise further barriers to Kedrowski's suit. All defendants have asserted Kedrowski has failed to state a claim as to any of his claims. This failure to state a claim includes further deficiencies, such as: (1) Kedrowski has failed to allege specific facts of their personal involvement in the claimed constitutional violations; (2) the non-governmental defendants are not state actors, thus not liable under § 1983 or § 1985; and (3) qualified immunity applies because Kedrowski has not pled viable constitutional violations. As mentioned above, defendants assert Kedrowski lacks standing to bring his

claims. Finally, some defendants assert this Court lacks personal jurisdiction over them.[5] Because this Court has concluded it lacks subject matter jurisdiction over this suit or it would otherwise be improper to proceed, it is inappropriate to wade into the merits of these arguments.

## III.    RECOMMENDATION

Kedrowski is displeased with the outcome of his divorce proceeding. The frustration from those proceedings has turned him towards external causes. While this Court concludes Kedrowski's claims cannot continue for lack of subject-matter jurisdiction, his underlying dissatisfaction may not be as farfetched as Defendants paint it. An organ of the Minnesota state judiciary partnered with advocacy programs to enact changes within the family court system. Despite those changes being supposedly gender neutral, those advocacy programs are decidedly not—indeed, the names of the organizations themselves betray the focus of their advocacy. That focus, as Kedrowski alleges, was invited into the courts and then weaved its way into an impartial system. If true, this embraced advocative focus potentially impugns the impartiality of the Fourth Judicial District.

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Elizabeth Richards and Minnesota Coalition for Battered Women's Motion to Dismiss, (ECF No. 59), be **GRANTED**;

---

[5] Kedrowski moves for limited discovery and an evidentiary hearing concerning the personal jurisdiction question. Because this Court determines it in unnecessary to resolve the question of personal jurisdiction, that motion should be denied.

2.  Judicial Defendants' Motion to Dismiss First Amended Complaint, (ECF No. 66), be **GRANTED**;

3.  Hennepin County Defendants' Motion to Dismiss, (ECF No. 72), be **GRANTED**;

4.  Defendant Liberty Aldrich and Fund for the City of New York's Rule 12 Motion to Dismiss, (ECF No. 78), be **GRANTED**;

5.  Defendant Loretta Fredrick's and Battered Women's Justice Project's Motion to Dismiss Plaintiff's Amended Complaint, (ECF No. 85), be **GRANTED**;

6.  Plaintiff David Kedrowski's Motion for Discovery and an Evidentiary Hearing, (ECF No. 95), be **DENIED**.


Date: April 9, 2019                               *s/ Steven E. Rau*
                                                   Steven E. Rau
                                                   United States Magistrate Judge
                                                   District of Minnesota

                                                   *Kedrowski v. Madden, et al.*
                                                   Case No. 18-cv-2573 (WMW/SER)